**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **DEMONDRIA JEFFERSON** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **Case No. 4:11CV143** |
| | § | |
| **GRAYSON COUNTY, GRAYSON** | § | |
| **SHERIFF'S DEPARTMENT, SECURITAS** | § | |
| **SECURITY SERVICES, USA, INC. and** | § | |
| **TASER INTERNATIONAL, INC.** | § | |
| | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**
**ON DEFENDANTS SECURITAS SECURITY SERVICES',**
**MICHAEL PERKINS' AND LE'ANN SCALLY'S COMBINED**
**MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a)**

## I.  BACKGROUND

Plaintiffs Demondria Jefferson and Demondria Jefferson as Guardian of Ki'Asha Buchanan, a minor child, claim that they were injured in an incident that allegedly occurred on or about March 18 and 19, 2009, at the Grayson County Jail.  The complaint was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

On March 18, 2009, Demondria Jefferson turned herself in to the Grayson County Jail for outstanding traffic warrants.  She alleges that she was two and one-half months pregnant at that time with Ki'Asha.  After she was booked and while she was in a holding cell in the early morning hours of March 19, 2009, she alleges a guard came to take her to her cell.  In the course of ascertaining Jefferson's medical condition, the Jail's medical personnel decided it was necessary for her to take

1

a tuberculosis test.  She declined, alleging in her complaint that the Jail's and the Grayson County Sheriff's Department's policy was that the test was not mandatory.  Jail personnel allegedly insisted and a conflict ensued, during which Jefferson crossed her arms and refused to allow the skin test.

She alleges that Defendants Miller and Burkhart entered her cell with a taser and attempted to unfold her arms.  During the struggle, Jefferson alleges that Defendant Miller used her taser at least three times and both defendants called for assistance with her.  Jefferson alleges that Defendants Phea, Pearson, Bowman, Neal, Lynch, Scally, Aguirre, Gray and Perkins responded and assisted Defendants Miller and Burkhart subdue her.  She alleges she was hurt during the struggle to the floor.  One of them allegedly administered the skin test with a needle, after which Defendant Burhkart said that the taser lead stuck in Jefferson's chest and Defendant Miller agreed.

Jefferson alleges that the defendants restrained her while medical personnel tried twice over a span of several minutes in each attempt to retrieve the taser lead before it was removed from her body.  She alleges they then left her in the holding cell and were deliberately indifferent to her medical needs afterwards.  She claims she experienced "pain all over her body" and went to the hospital after she was released, where she was diagnosed with contusions on her arms, legs, back and chest and had muscle spasms.  She alleges she is "on pain medication and muscle relaxers," but has not specified what the medication is or whether it was medically prescribed.  She has not alleged a specific injury as to Ki'asha, however.

Plaintiff filed her original complaint on March 18, 2011.  *See* docket entry #1 ("Original Complaint").  Following an early round of motions, she then filed her amended complaint (docket entry #20) ("Amended Complaint"), which is the operative pleading in this action.

Plaintiff sued the Grayson County Sheriff's Department ("GCSD"); Grayson County;

Securitas Security Services, USA, Inc. ("Securitas"); Taser International, Inc. ("Taser"); and a number of individuals, including GCSD deputies Donna Miller; Robert Burkhart; Carl Phea; Wanda Pearson; Jason Bowman; Robert Neal; and GCSD medical personnel Patrick Lynch; as well as Securitas employees Le'Ann Scally; Rene Aguirre; Josh Gray; and Michael Perkins.  To date, all Defendants have been dismissed from this lawsuit except Defendants Securitas, Perkins and Scally (collectively, the "Securitas Defendants").

Plaintiff Demondria Jefferson's claims against these three Defendants include a 42 U.S.C. § 1983 claim for allegedly violating her Fifth, Eighth and Fourteenth Amendment rights for failing to provide proper medical treatment, indifference to her medical needs, and "erroneous customs, policies, and procedures."  In addition, Plaintiff Demondria Jefferson brings certain "pendent state law claims" against Securitas for failure to train employees in the use of a taser, failure to properly discipline, supervise and dismiss violent officers, deliberate indifference to Plaintiff's medical needs, denial of medical attention, and failure to properly train officers in "recognizing and responding to pregnant citizens."  She also brings an "assault and battery" claim against Securitas.  As to the Securitas private security officers, Plaintiff Demondria Jefferson brings claims including excessive use of force, failure to stop the use of excessive force, and deliberate indifference and similar "pendent state law claims" as against Securitas.

The Securitas Defendants assert, and a fair reading of the Amended Complaint supports, that the only actual claim brought by Plaintiff Ki'asha Buchanan is the "assault and battery" claim.  All other claims are explicitly delineated as being brought by Plaintiff Demondria Jefferson; the "assault and battery" claim is brought by "Plaintiffs," in the plural.

The product liability claim in the Amended Complaint was aimed solely at dismissed

3

Defendant Taser and will not be considered herein.

The subject of this Report and Recommendation is the Securitas Defendants' Motion for Summary Judgment ("MSJ") pursuant to Fed. R. Civ. P. 56(a).  *See* docket entries #66-69.  Plaintiff has not filed any response in opposition to the Motion.  Accordingly, the Court is entitled to assume that Plaintiff has no opposition to the MSJ.  *See* E.D. Tex. Local R. 7(d).[1]

## II.     STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Poole v. City of Shreveport*, - - - F.3d - - - -, 2012 WL 3517357, at *3 (5th Cir. Aug. 16, 2012) (quoting Fed. R. Civ. P. 56(a)); *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (same).  The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  The moving party, however, "need not negate the elements of the nonmovant's case."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case.

---

[1]     It appears that Plaintiffs may have ceased prosecuting their lawsuit.  Aside from failing to respond to this MSJ, they also did not respond to former Defendant Grayson County's recent Motion to Dismiss Unserved Defendants (docket entry #57) and did not participate in providing substantive input to the Proposed Joint Final Pre-Trial Order other than to email the Securitas Defendants a statement that "it looks good," referring to the draft prepared by the Defendants.  *See* docket entry #71 at 1.  If that is the case, grounds exist for the dismissal of this lawsuit pursuant to Fed. R. Civ. P. 41(b).

*Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).  Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial.  *Id*.  Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden.  *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions.  *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987).  The district court must look to the full record, including the pleadings, affidavits, and depositions.  *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Under this standard, fact questions are considered with deference to the nonmovant.  *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).  The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  *Little*, 37 F.3d at 1075.  The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48.  An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in

5

favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When the moving party has carried its burden under Rule 56(c),[2] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

Furthermore, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

## III.   ANALYSIS AND DISCUSSION

The Securitas Defendants assert several reasons why they are entitled to summary judgment, and have submitted competent summary judgment evidence including the Amended Complaint itself (Ex. A to the MSJ); the Affidavit of Michael Perkins (Ex. B); the Affidavit of Rene Aguirre (Ex. C); the Affidavit of Le'Ann Scally (Ex. D); excerpts from the deposition of Demondria Jefferson (Ex. E); and excerpts filed under seal from the Grayson County Investigation File (Ex. F).

### A.   Securitas Defendants' Participation In The Altercation With Plaintiff

First, the Securitas Defendants assert that no Securitas officer participated in the alleged

---

[2]      The predecessor to the current Rule 56(a).

altercation involving Plaintiff at the Grayson County Jail on March 19, 2009.[3]  MSJ at 8.  Defendant

Perkins swore in his affidavit that he did not serve at the Grayson County Jail at the time of the

altercation and has never worked at that facility.  *See* MSJ Ex. B ("Perkins Aff.") at 2.  He asserts

he was at home at the time of the incident.  *Id*.  In his capacity as a Securitas branch manager, he

assigned Defendant Scally and former Defendants Aguirre and Gray to work at that facility.  Both

Aguirre and Gray were required to stay at all times in the "pods," which are separate from the "book-

in" area where the altercation took place.  *Id*.  He also asserted that none of those three individuals

has ever been issued a taser by Securitas.  *Id*.  Additionally, he attests that both are Caucasian males

and no Securitas employee would have worn a uniform tag with the name "Bowman" on it.  *Id*.

Defendant Scally swore in her affidavit that she was present in the Grayson County Jail

(referred to in her affidavit as the "Grayson County Detention Center").  *See* MSJ Ex. D ("Scally

Aff.") at 2.  While in an elevator, she heard an emergency call that Grayson County Sheriff's

deputies were dealing with a detainee who was refusing to comply with the deputies' request.  *Id*.

When she arrived at the book-in area, she saw "numerous" deputies in and around the holding cell

where Plaintiff Demondria Jefferson was held.  *Id*.  She did not see any Securitas employees in or

near that cell.  *Id*.  She never touched or attempted to restrain Plaintiff or observe any other Securitas

employee touch or attempt to restrain her, though she did see Plaintiff attempt to spit on Sergeant

---

[3]       As the Court has recounted as background facts, Plaintiff Demondria Jefferson
checked into the Grayson County Jail the evening of March 18, 2009, and the actual confrontation
and altercation that resulted in this lawsuit occurred in the early morning hours of March 19, 2009.
The affidavits offered in support of the MSJ all refer to the events of March 18, 2009.  However, in
context of the descriptions of the events they relate, it is clear that they are addressing the same event
in the early morning of March 19, 2009, as is described in the Amended Complaint.  The Court
accepts the affidavits on that basis.

Miller and other Sheriff's deputies who were attempting to restrain her. *Id*. Defendant Scally asserts that she was not issued nor used nor possessed a taser during the incident. *Id*.

Former Defendant Aguirre swore in his affidavit that during the altercation, he and former Defendant Gray were working in the "pods" section of the Grayson County Jail, which are located in a separate area from the book-in area where Plaintiff was. *See* MSJ Ex. C ("Aguirre Aff.") at 1-2. He heard over his radio of the incident in the book-in area. *Id*. at 2. Both Aguirre and Gray remained at their posts and did not attempt to assist the Sheriff's deputies in dealing with the problem; he further states that he did not observe the incident. *id*. He had no physical contact or verbal communications with any person in the book-in area and was not issued nor used nor possessed a taser during the altercation. *Id*. Finally, he explains that both he and Gray are Caucasian males and that their uniform badges did not carry the name "Bowman." *Id*.

These affidavits are corroborated by the investigative reports of the Grayson County Sheriff's Department. *See* MSJ Ex. F. These records, filed under seal, include the statements of several deputies and emergency medical technicians ("EMT") present during the altercation. *See id*. at Bates nos. SEC-SEALED 000001-15. The investigative reports name all of the participants in the incident. They are: Sergeant Miller, Deputy Burkhart, Deputy Bowman, Officer Pearson, Officer Phea and EMT personnel Lynch and Neal. *See id*. No Securitas employee is named in any report as a participant or witness. *Id*.

As noted, Plaintiffs have not filed any response to this MSJ. However, the Securitas Defendants addressed the possible evidence Plaintiffs might have cited. Exhibit E to the MSJ includes excerpts of Plaintiff Demondria Jefferson's deposition taken on February 20, 2012 (identified by Bates numbers SEC 0000029-37). During her deposition, she stated that during the

8

altercation, a black man with a Securitas uniform on one side of her and a lady with a Securitas uniform with dark hair on the other side of her held her legs.  *See* Ex. E, Bates no. SEC 0000031.  She also stated that the black man, who later was holding her arm, had a name badge that said "Bowman" on it.  *Id.*, Bates no. SEC 0000032.  However, as the Aguirre and Perkins affidavits relate, neither of the male Securitas employees at the Grayson County Jail during the altercation was black.  *See* Ex. A at 2; Ex. C at 2 (referring to Aguirre and Gray as "Caucasian").  Further, neither of them wore a name badge with the name Bowman on it.  *Id.*  Both Aguirre and Perkins are aware that there is a Jason Bowman who works as a Sheriff's deputy at the Grayson County Jail.  *Id.*  Additionally, Plaintiff herself identified Jason Bowman, a former Defendant in this lawsuit who has been dismissed, as a Deputy Sheriff for Grayson County, in her Amended Complaint.  *See* Amended Complaint at 4, ¶ 22.

With regard to the "lady" Plaintiff Demondria Jefferson testified was holding her other leg, the investigative report by Officer Phea specifically stated that Sheriff's Officer Pearson held Plaintiff down along with Deputy Bowman.  *See* Ex. F at Bates no. SEC-SEALED 000006.  Plaintiff herself identifies Officer Wanda Pearson as a Deputy Sheriff for Grayson County.  *See* Amended Complaint at 4, ¶ 21.

Therefore, her deposition testimony that "Bowman" and the woman helping to hold her down were Securitas employees is demonstrably unreliable.

Plaintiffs have submitted no evidence to show a genuine dispute of material fact.  Fed. R. Civ. P. 56(a).  The Court therefore finds that no Securitas employee was involved in the altercation with Plaintiff that is the subject of this lawsuit.

9

### B.      Plaintiff Ki'asha Buchanan's Injury

As discussed, arguably the only claim brought by Plaintiff Ki'asha Buchanan is one for "assault and battery" during the altercation while she was an unborn child being carried by her mother, Plaintiff Demondria Jefferson.  However, the Amended Complaint alleges no injury with regard to her.  In addition, the Securitas Defendants submit additional excerpts from the deposition of Demondria Jefferson showing that there was no injury to the child.  *See* MSJ Ex. E at Bates nos. SEC 0000033-34 (no doctor has said that Ki'asha suffered any current or expected future injuries). Thus, there is evidence of no injury to Ki'asha from this incident, and Plaintiffs have submitted no competent evidence to show a genuine dispute of material fact otherwise.  Fed. R. Civ. P. 56(a). Absent an injury, Plaintiffs cannot state a claim.  *Lemons*, 412 Fed. Appx. at 673; *Ratcliff v. City of Livingston, Texas*, 406 Fed. Appx. 843, 844 (5th Cir. 2010) (per curiam), *cert. dismissed*, 132 S. Ct. 373, 181 L. Ed. 2d 4 (2011).

### C.      *Respondeat Superior* Liability Under § 1983

The Securitas Defendants assert that Plaintiffs sue Securitas under a theory of *respondeat superior* because of its supervisory position over its employees.  The Court agrees; no claim in the Amended Complaint suggests otherwise.  However, the doctrine of *respondeat superior* does not apply in § 1983 actions.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990).  Under 42 U.S.C. § 1983, a supervisory entity or officials are not liable for subordinates' actions on any vicarious liability theory. In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct.

10

1937, 173 L. Ed. 2d 868 (2009).  There, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct.  *Id.*  As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases.  *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010); *see also Floyd v. City of Kenner, La.*, 351 Fed. Appx. 890, 897 (5th Cir. 2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," quoting *Iqbal*, 556 U.S. at 676).

Under Fifth Circuit jurisprudence, a supervisory entity may only be held liable if one of the following exists: (1) personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisory entity's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987).  These two conditions are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting. *Iqbal*, 556 U.S. at 677.

Here, nothing alleged in the Amended Complaint suggests any personal involvement or causal connection between Securitas and the alleged actions of the individual officers involved.  In fact, the summary judgment evidence the Securitas Defendants have submitted shows that no Securitas employee, including Defendants Scally and Perkins and former Defendants Aguirre and Gray, was involved in the incident with Plaintiff Demondria Jefferson.  Further, Plaintiffs's failure to respond to the MSJ with competent evidence to show otherwise means that they have not raised a genuine issue of material fact with regard to any potential vicarious liability by Securitas under a

theory of *respondeat superior*. Therefore, this doctrine cannot be used to find liability against Defendant Securitas.

### D.    Statute Of Limitations

In addition to the grounds already discussed, the Securitas Defendants also argue that individual Defendants Scally and Perkins should be dismissed because they were not named in this action until Plaintiffs filed the Amended Complaint, which was well over two years after the altercation at the Grayson County Jail. Therefore, they argue, the two-year statute of limitations applicable to civil rights lawsuits under 42 U.S.C. § 1983 should bar the action against them.

However, the analysis is not as simple as that. Plaintiffs' original complaint, as the Court has previously observed, was filed on the eve of the two-year limitations period's termination, on March 18, 2011. Although Defendants Scally and Perkins were not named until the Amended Complaint, months later, "[a]n amended complaint may "relate back" to an original complaint for statute of limitations purposes." *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010). Whether an amended complaint relates back to an original complaint is governed by Fed. R. Civ. P. 15(c), which states in relevant part:

> (1)  *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when:
>
> . . . .
>
> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C)  the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party is brought in by amendment:
>
> > (i)  received such notice of the action that it will not be prejudiced in defending

on the merits; and

(ii)     knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

*See id*. at 372-73 (quoting Fed. R. Civ. P. 15(c) in relevant part).  For a party to show that an amended complaint relates back to the original complaint, filed within the statute of limitations, the party must demonstrate that the amended pleading satisfies the Rule 15(c) elements above.  *Id*. at 373.  Here, of course, Plaintiffs have not responded to the MSJ, so such proof is missing.  However, the Securitas Defendants have not argued in the MSJ that the elements are *not* met.  In fact, they ignore Rule 15(c) altogether and simply argue the existence of the two-year limitations period.  Therefore, the Securitas Defendants have not shown that the Amended Complaint does *not* relate back under the applicable rules, creating at the very least a genuine dispute of material fact.  Therefore, the Court will not find that the statute of limitations applies as to Defendants Scally and Perkins, at least so far as the instant argument goes.

## IV.     RECOMMENDATION

The deficiency of the Securitas Defendants' statute of limitations argument notwithstanding, their other arguments discussed above establish that there is no genuine dispute of a material fact and that the Securitas Defendants are entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Poole*, 2012 WL 3517357, at *3; *VRV Development L.P.*, 630 F.3d at 455.  It is therefore recommended that the Securitas Defendants' Motion for Summary Judgment (docket entries #66-69) be **GRANTED** and that Defendants Securitas, Scally and Perkins be **DISMISSED** from this complaint **WITH PREJUDICE**.  Inasmuch as these are the final three Defendants remaining in this action, it is further recommended that the Court **DISMISS** the lawsuit itself **WITH PREJUDICE**

and issue **FINAL JUDGMENT** that Plaintiffs take nothing.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 31st day of August, 2012.**

_____

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE